## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "**Agreement**") is entered into this 13 day of May, 2014, by and between the parties identified in Section 1 below.

1. **Parties**

   The parties to and beneficiaries of this Release and Settlement Agreement (each a "**Party**" and collectively, the "**Parties**") are:

   (a) JEFFREY PATTERSON (hereinafter "**Mr. Patterson**"); and

   (b) NORTH GEORGIA COMMUNITY ACTION, INC., including its directors, managers, and other officials, and JONATHAN D. RAY, in his individual capacity (collectively, the "**Defendants**").

2. **Recitals**

   (a) WHEREAS, Mr. Patterson claims that Defendants failed to pay him the correct amount of overtime wages and improperly offered him compensatory time at a one-to-one ratio, and that Defendants have violated numerous state and federal employment laws;

   (b) WHEREAS, Defendants deny that any Defendant has any liability to Mr. Patterson on any grounds; and

   (c) WHEREAS, the Parties desire to avoid the uncertainty and expense of further litigation and to resolve the Mr. Patterson's claims amicably.

   (d) NOW, THEREFORE, in consideration of the recitals, promises, and general covenants contained herein, the Parties agree as follows:

3. **Scope of Settlement**

   (a) This Agreement is intended to and does release and settle the claims alleged by Mr. Patterson against Defendants, including: (1) Civil Action Number 2:13-cv-230-WCO filed October 4, 2013 filed with the United States District Court for the Northern District of Georgia (the "**Lawsuit**"); and (2) Charge of Discrimination Number 410-2014-02541 filed March 12, 2014 with the Equal Employment Opportunity Commission (the "**EEOC Charge**") and (3) In addition, Mr. Patterson, for himself and for each of his heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges Jonathan D. Ray and NGCA and each of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns; and each of its past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, benefits plans sponsored or administered

        by NGCA, divisions, units, branches and any other persons or entities acting on their behalf of and from any and all claims, liabilities, causes of action, demands to any rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Mr. Patterson may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; **the Age Discrimination in Employment Act,** as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act (COBRA); the Family and Medical Leave Act; the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations of any kind, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim.

      (b)    This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT; nor shall any provision of this AGREEMENT be interpreted to waive, release, or extinguish any rights that – by express and unequivocal terms of law – may not under any circumstances be waived, released, or extinguished.

            Nothing in this AGREEMENT shall be construed as to prohibit Mr. Patterson from initiating or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC") or any other federal, state or local agency. Notwithstanding the foregoing, Mr. Patterson agrees not to accept any monetary damages of any kind in any charge, complaint or lawsuit filed by Mr. Patterson or by anyone else on Mr. Patterson's behalf.

            Nothing in this AGREEMENT shall be construed as a waiver by Mr. Patterson of any rights under any current claim for worker's compensation benefits or potential claim arising from his prior period of employment with Defendants.

      (c)    Defendants waive and release any and all claims of any nature that Defendants have against Mr. Patterson as of the date of the execution of this Agreement, including any and all claims for attorneys' fees and costs.

**4.**    **<u>No Admission of Liability</u>**

      Neither this Agreement nor any consideration given hereunder constitutes an admission. Nor is it to be construed as an admission of any right, entitlement, or fault or liability of any kind

on the part of any settling party. The Parties agree that each of them denies any and all fault or liability of any type and denies any wrongful conduct with regard to one another.

5.  **Payment and Compensation to Mr. Patterson**

For and in consideration of the promises, recitals, releases, waivers, terms, and conditions set forth in this Release and Settlement Agreement, Defendant hereby agrees to pay Mr. Patterson and his attorneys (Feldman Morgado, P.A.) payments and attorneys' fees in the total amount of $46,500.00, releasing Defendants of any and all claims contemplated in Section 3 of this Agreement, to be structured in the following manner:

(a)  No later than fourteen (14) calendar days after the Court approves the settlement of the Lawsuit and dismisses the Lawsuit, with prejudice, Defendants shall deliver (by courier, UPS, or FedEx) payment totaling $36,700.00 to the office of Mr. Patterson's counsel at 501 North Reo Street, Tampa, Florida, 33609:

(i)  a check for $3,100.00 payable to Mr. Patterson with applicable withholdings removed for alleged unpaid wages;

(ii)  a check for $3,100.00 payable to Mr. Patterson for alleged liquidated damages;

(iii)  a check for $26,500.00 payable to Feldman Morgado, P.A., Taxpayer Identification Number 27-1410489, for all attorneys' fees incurred in the prosecution of the Lawsuit, with "attorneys' fees for the Lawsuit" in the "for" line; and

(iv)  a check for $4,000.00 payable to Feldman Morgado, P.A. for any and all costs and expenses incurred in the prosecution of the Lawsuit, "costs and expenses for the Lawsuit" in the "for" line.

(b)  No later than fourteen (14) calendar days after Mr. Patterson notifies the EEOC that he has resolved his claims raised in the EEOC Charge pursuant to this Release and Settlement Agreement, Defendants shall deliver (by courier, UPS, or FedEx) payment totaling $9,800.00 to the office of Mr. Patterson's counsel at 501 North Reo Street, Tampa, Florida, 33609:

(i)  a check for $5,800.00 payable to Mr. Patterson for any and all alleged damages associated with the EEOC Charge; and

(ii)  a check for $4,000.00 payable to Feldman Morgado, P.A. for all attorneys' fees incurred in the prosecution of the EEOC Charge, with "attorneys' fees for EEOC Charge" in the "for" line.

6.  **Neutral Job Reference**

In addition to the consideration contemplated in Section 5, Defendants shall provide a neutral job reference if contacted by any third party inquiring about Mr. Patterson's employment, providing only dates and times of work and verification of pay.

7. **Mr. Patterson's Training Materials**

For a period of thirty (30) calendar days following the execution of this Agreement, Defendants shall make Mr. Patterson's training manuals and personal items available for pick up at the law office of Barry Lee, located at Clark & Clark, Attorneys at Law, P.C., 84 River Street, Ellijay, Georgia, 30540.

8. **Confidentiality**

(a) The Parties acknowledge and agree that a signed copy of this Release and Settlement Agreement will be filed as an Exhibit to their Motion seeking Court approval of the same.

(b) The Parties acknowledge and agree that neither the Motion seeking Court approval nor this Agreement will be filed under seal.

(c) As such, the Parties acknowledge and agree that the terms of this Release and Settlement Agreement will be a public record.

(d) However, Mr. Patterson promises that he shall not reveal, comment on, or publicize in any way any aspect of the Release and Settlement Agreement, including but not limited to the amount of settlement, to any third party.

(e) Mr. Patterson may disclose the amount of settlement to a Cleared Person. A Cleared Person means any Party's attorney, Party's attorney's employees, Party's financial advisors, Party's tax advisors, any Medicare or Medicaid representative concerning a related lien, and any Judge having jurisdiction over this confidential Release and Settlement Agreement.

9. **Costs and Attorney's Fees**

Except as provided in Section 5 above, the Parties unconditionally and reciprocally release and agree to hold each other harmless from any claims for attorneys' fees, costs, or expenses in any form incurred by the Parties.

10. **Advice of Counsel and Older Workers Benefit Protection Act**

Mr. Patterson acknowledges that he has been advised by Defendants to consult with any attorney in regard to the EEOC Charge, including whether to sign this Agreement. He further acknowledges that he has been given twenty-one (21) days from the time he receives this Agreement to consider whether to sign it. If Mr. Patterson has signed this Agreement before the end of this twenty-one (21) day period, it is because he freely chose to do so after carefully

considering its terms. Finally, Mr. Patterson shall have seven (7) days from the date he signs this Agreement to change his mind and revoke the Agreement. Any revocation within this period must be submitted in writing, to _____ and state, "I hereby revoke my acceptance of our Release and Settlement Agreement." The revocation must be personally delivered to _____ or [his/her] designee, or mailed to _____ and postmarked within seven (7) calendar days of the execution of this Release and Settlement Agreement. This Release and Settlement Agreement shall not become effective or enforceable until the revocation period has expired and a letter in the form attached as "Exhibit A," dated and signed no sooner than eight (8) days after Mr. Patterson dates and signs this Release and Settlement Agreement, is received by _____.

11.   **No Liens**

Mr. Patterson warrants that there are no liens or other encumbrances on the settlement proceeds, including but not limited to any liens involving attorneys' fees, except that a portion is being paid as attorneys' fees as noted in Section 5 above. Mr. Patterson further agrees that he is solely and entirely responsible for the payment of any and all federal, state, or local taxes or assessments due upon any and all sums paid in connection with this Release and Settlement Agreement.

12.   **Warranties**

(a)   Mr. Patterson warrants and represents that he is fully informed and has full knowledge of the terms, conditions, and effects of this Release and Settlement Agreement.

(b)   The Parties warrant and represent, each to the other, that they have either personally or through their attorneys, investigated facts surrounding this Release and Settlement Agreement, that they are fully satisfied with the terms and effects of this Agreement, and that they are legally competent to execute this Agreement.

(c)   The undersigned attorneys further warrant they are legally competent to execute this Agreement. The undersigned attorneys further warrant and represent that they have personally explained the terms and effects of this Agreement to their respective clients(s) and that their respective client(s) fully understand and are satisfied with the terms and effects of this Agreement.

(d)   The Parties warrant and represent, each to the other, that no promise or inducement has been offered or made expect as herein set forth, and that this Release and Settlement Agreement is executed without reliance upon any other statement or representation in connection with this Release and Settlement Agreement.

13.   **Miscellaneous**

(a)   <u>Severability</u>.   If any provision or term of this Release and Settlement Agreement of this Release and Settlement Agreement should be declared invalid or unenforceable, such

declaration will not affect the validity or enforceability of the remaining terms and conditions hereof.

(b) <u>Sole and Entire Agreement</u>. The terms of this Release and Settlement Agreement, in its entirety, constitute the complete understanding and agreement of the Parties with respect to all matters within the scope of the Agreement, and no other promise or agreement will be binding.

(c) <u>Amendment, Modification, and Rescission of Agreement</u>. This Release and Settlement Agreement may not be amended, modified, superseded, canceled, or terminated, and its terms and conditions may not be waived, except as provided in Section 8, or by a written instrument executed by the Parties or, in the case of a waiver, by the party to be charged with such waiver. No waiver by any Settling Party of any condition or of the breach of any term, covenant, representation, or warranty contained in this Release and Settlement Agreement, in any one or more instances, will be deemed to be construed as a further or continuing waiver of any such condition or breach in other instances, or as a waiver of any other condition or of any breach of any other terms, covenants, representations, or warranties contained in this Agreement.

(d) <u>Legally Binding Agreement</u>. The rights and obligations of the Parties under this Release and Settlement Agreement will inure to the benefit of and shall be binding upon their successors, assigns, employees, employees, agents, and/or legal representatives.

(e) <u>Governing Law and Interpretation</u>. The Parties agree that the law of the State of Georgia shall govern disputes concerning any aspect of this Release and Settlement Agreement.

**MR. PATTERSON IS HEREBY ADVISED THAT HE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT AND THAT HE HAS UP TO SEVEN (7) DAYS FROM HIS SIGNING OF THIS AGREEMENT TO REVOKE HIS ACCEPTANCE OF THIS AGREEMENT .**

AGREED BY MR. PATTERSON:

**Jeffrey Patterson**

_____   Date 5/15/14

ATTORNEY FOR MR. PATTERSON:

**FELDMAN MORGADO, P.A.**
Mitchell L. Feldman

6

_____   5/13/14
                             _____
                             Date


AGREED BY NORTH GEORGIA COMMUNITY ACTION, INC.:

**North Georgia Community Action, Inc.**


_____   _____
By:                         Date


AGREED BY JONATHAN D. RAY:

**Jonathan D. Ray**


_____
                            _____
                            Date




ATTORNEY FOR DEFENDANTS:

**HALL BOOTH SMITH, P.C.**
Donald W. Benson


_____   _____
                            Date

AGREED BY NORTH GEORGIA COMMUNITY ACTION, INC.:

**North Georgia Community Action, Inc.**

_/s/ Marie Cain_____     _5/15/14_____
By:                                                                          Date

AGREED BY JONATHAN D. RAY:

**Jonathan D. Ray**

_/s/ Jonathan S. Ray_____     _5-15-14_____
                                                                              Date

ATTORNEY FOR DEFENDANTS:

**HALL BOOTH SMITH, P.C.**
Donald W. Benson

_____     _____
                                                                              Date

7